UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No.: 26-

ALEXIS CLERE,

Plaintiff,

v.

DELTA AIR LINES, INC.,

Defendant

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. This is an action for bodily injury sustained by the Plaintiff, Alexis Clere, on board Delta Air Lines Flight 203 from Athens, Greece, on September 30, 2024. The Plaintiff suffered life-threatening anaphylaxis on board. Delta's crew was not trained or equipped to respond, the aircraft's emergency medical equipment was incomplete and not properly maintained, and the flight crew declined to divert promptly to a nearby airport while the Plaintiff's blood pressure fell and she intermittently stopped breathing.

2. The Plaintiff's claim arises under the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309 (the "Montreal Convention").

**PARTIES**

3. The Plaintiff, Alexis Clere, is an adult individual residing in Boulder, Colorado.

4. The Defendant, Delta Air Lines, Inc. ("Delta"), is a Delaware corporation with its principal place of business in Atlanta, Georgia. Delta is a certificated air carrier that operates scheduled passenger service to, from, and within the Commonwealth of Massachusetts, including at Boston Logan International Airport.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claim arises under a treaty of the United States, the Montreal Convention. In the alternative, the Court has jurisdiction under 28 U.S.C. § 1332(a)(1): the Plaintiff is a citizen of Colorado, Delta is a citizen of Delaware and Georgia, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. The Plaintiff's carriage was "international carriage" within Article 1(2) of the Montreal Convention. Her place of departure was Greece and her place of destination was the United States, both States Parties to the Convention.

7. The United States is a proper forum under Article 33 of the Montreal Convention. It is the place of Delta's domicile and principal place of business, the place of destination of the Plaintiff's carriage, and the State of the Plaintiff's principal and permanent residence, to and from which Delta operates passenger services from premises it leases or owns.

8. This Court has personal jurisdiction over Delta. Delta regularly conducts business in Massachusetts and operates flights to and from Boston Logan International Airport. Delta diverted Flight 203 to Boston, landed it there, and disembarked the Plaintiff there for emergency transport to Massachusetts General Hospital. The Plaintiff's claim arises out of and relates to Delta's contacts with Massachusetts.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (c)(2). A substantial part of the events giving rise to the claim occurred here, including the diversion, disembarkation, and the Plaintiff's emergency treatment. Delta is subject to personal jurisdiction here.

## FACTUAL ALLEGATIONS

### *A. The Flight and the Allergen Exposure*

10. On September 30, 2024, the Plaintiff was a fare-paying passenger on Delta Flight 203 from Athens, Greece, to John F. Kennedy International Airport, New York, under a contract of carriage with Delta. Her ticketed final destination was Colorado.

11. The Plaintiff has a severe allergy to peanuts, as well as allergies to shellfish and latex. Her peanut allergy is severe enough that airborne peanut particles can trigger a reaction.

12. During the flight, Delta flight attendants distributed packaged snacks to passengers. On information and belief, the snacks were packaged in Delta-branded wrapping that listed no ingredients and no allergen warning.

13. Delta made no announcement that peanut-containing or peanut-processed products would be served and gave the Plaintiff no opportunity to protect herself.[1]

14. The Plaintiff did not eat the snack. As passengers around her opened their packages, the Plaintiff immediately began to have difficulty breathing and swallowing, severe itching, and a spreading rash on her arms.

[1] According to the American Academy of Allergy, Asthma & Immunology, 1-2% of the population of the United States has a peanut allergy. On a flight of 300 people, 3-6 people would have the allergy.

### *B. Delta's Response*

15. The Plaintiff's companion alerted the flight attendants to her medical issue. The Plaintiff's condition quickly became life-threatening.

16. The flight attendants were unable to respond effectively. They did not recognize anaphylaxis, did not know the contents of the aircraft's emergency medical kit, and did not know how to use it.

17. The flight attendants did not move the Plaintiff away from the source of the allergen, on information and belief the rear galley area, for an extended period after her symptoms began.

18. Only after the Plaintiff's condition became dire did the crew make an announcement asking for medical professionals on board. Several physicians responded.

19. The Plaintiff was given diphenhydramine (Benadryl), which was ineffective. She was then given epinephrine, and her condition continued to worsen. She was placed on oxygen. Her breathing deteriorated to the point that she intermittently stopped breathing.

20. Only then, long after her symptoms began, was the Plaintiff moved forward in an apparent effort to remove her from the airborne allergen.

21. A second dose of epinephrine was administered. It caused the Plaintiff severe internal burning pain and failed to stabilize her. On information and belief, the epinephrine supplied by Delta was expired or had not been properly stored and maintained.

22. The Plaintiff's blood pressure fell. The volunteer physicians feared cardiac arrest may occur.

23. The physicians determined that the Plaintiff needed intravenous fluids. The emergency medical kit contained an IV bag but lacked the antiseptic supplies, appropriately sized needles, and flush and line-priming supplies needed to start an IV safely. Without them, an IV risked introducing air into the Plaintiff's bloodstream and causing an air embolism, stroke, or cardiac arrest. The physicians were forced to abandon IV resuscitation.

24. Because of the risk that the Plaintiff's heart would stop, the physicians connected her to the aircraft's automated external defibrillator, where she remained for the rest of the flight.

***C. Failure to Divert Promptly***

25. While the Plaintiff was in anaphylactic shock, the aircraft was over land airspace, within reach of airports capable of receiving it and providing emergency care.

26. The flight crew declined to divert to any of those airports. On information and belief, the crew did not timely consult, or did not follow the advice of, Delta's ground-based medical advisory service.

27. The flight eventually diverted to Boston Logan International Airport. After the aircraft landed and taxied to the gate, the Plaintiff was taken by ambulance to Massachusetts General Hospital.

***D. Plaintiff's Injuries***

28. At Massachusetts General Hospital, the Plaintiff was diagnosed with anaphylaxis. She had an elevated white blood cell count, elevated heart rate, and elevated blood

pressure, and received IV fluids for volume resuscitation, the treatment that Delta's equipment made impossible on board.

29. As a direct result, the Plaintiff suffered bodily injury, including anaphylaxis, anaphylactic shock, respiratory arrest, and hypotension, together with the physical pain and injury caused by the epinephrine Delta supplied.

30. As a result of her bodily injuries and the near-fatal ordeal they caused, the Plaintiff has suffered and continues to suffer severe psychological injury. She has left her employment as a tour guide and tutor, withdrawn from her graduate degree program, become largely hesitant to leave her home, and been unable to fly. She has incurred and will incur medical expenses, lost earnings, and loss of earning capacity.

***E. Federal Equipment and Training Requirements***

31. Federal Aviation Administration regulations require Delta to carry, on aircraft of this type, an approved emergency medical kit and automated external defibrillator with specified contents, including epinephrine, IV administration supplies, syringes, and needles, and to inspect them regularly so that they are serviceable.

32. FAA regulations also require Delta to train crewmembers in the location, function, and use of emergency medical equipment. 14 C.F.R. § 121.805.

33. On information and belief, Delta's emergency medical kit on Flight 203 did not contain the required contents or was not in serviceable condition, and Delta's crew had not been trained as required.

34. Delta's own policies and procedures for in-flight medical emergencies, food allergies, and diversions, and the standards of the airline industry, required a timely

and effective response. The crew's response departed from those policies and standards.

## COUNTS

### COUNT I
### Liability Under Article 17 of the Montreal Convention

35. The Plaintiff repeats and incorporates paragraphs 1 through 34 as if fully set forth herein.

36. Under Article 17(1) of the Montreal Convention, Delta is liable for damage sustained in case of bodily injury of a passenger upon condition that the accident causing the injury took place on board the aircraft.

37. The Plaintiff sustained bodily injury on board Flight 203 caused by one or more "accidents" within the meaning of Article 17: unexpected or unusual events or happenings external to the Plaintiff, including the following, each alone and in combination:

(a) Delta's distribution, in an enclosed cabin, of unlabeled snacks containing or cross-contaminated with peanuts, without warning or announcement;

(b) The crew's failure, contrary to Delta's policies, FAA requirements, and industry standards, to recognize and respond to the Plaintiff's anaphylaxis, including the failure to move her away from the allergen for an extended period;

(c) Delta's provision of expired, improperly maintained, or ineffective epinephrine, which failed to stabilize the Plaintiff and caused her additional bodily injury;

(d) The absence from Delta's emergency medical kit of required equipment needed to administer IV fluids safely, which prevented resuscitation of the Plaintiff while she was in shock; and

(e) The flight crew's refusal to divert to a nearby suitable airport while the Plaintiff was in life-threatening anaphylactic shock over land.

38. These events were not the Plaintiff's internal reaction to the usual, normal, and expected operation of the aircraft. They were departures from Delta's own procedures, federal regulatory requirements, and industry standards.

39. The accidents caused the Plaintiff's bodily injuries and aggravated and prolonged them and caused the mental and emotional injuries that flow from them.

40. The Plaintiff's damages exceed Special Drawing Rights. Under Article 21(2), Delta is liable for the full amount of those damages because they were due to the negligence or other wrongful act or omission of Delta and its servants and agents and were not due solely to the negligence or wrongful act or omission of a third party.

41. This action is brought within two years of the date of the aircraft's arrival, as required by Article 35.

**DAMAGES**

42. As a direct and proximate result of the accidents described above, the Plaintiff has sustained and will sustain damages including: physical pain and suffering; mental anguish and emotional distress resulting from her bodily injuries; past and future medical and psychological treatment expenses; medical treatment expenses, past and future lost earnings; loss of earning capacity; and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Alexis Clere, requests that the Court enter judgment in her favor against the Defendant, Delta Air Lines, Inc., and award:

(a) Compensatory damages in an amount to be determined at trial;

(b) Pre-judgment and post-judgment interest as allowed by law;

(c) Costs of this action; and

(d) Such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, the Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,
The Plaintiff,
Alexis Clere,
By her attorneys,

*/s/ Michael V. Glennon*

Michael V. Glennon, BBO# 678977
BRODY, HARDOON, PERKINS & KESTEN, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
(617) 880-7100
mglennon@bhpklaw.com

DATED: September 29, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/ Michael Glennon*
Michael Glennon

DATED: September 29, 2026